888

WOODS, Acting Housing Expediter, v.
COHEN.

No. 12196.

United States Court of Appeals
Fifth Circuit.

Jan. 18, 1949.

Nathan Siegel, Special Lit. Atty. and William A. Moran, Special Lit. Atty., both of Washington, D. C., and Howell C. Happp, Regional Rent Atty. and J. Edwin Fleming, Regional Lit. Atty., both of Dallas, Tex., for appellant Acting Housing Expediter.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The complaint filed June 20, 1947, charged. the defendant with collecting excess rent subsequent to Aug. 5, 1946, for the use and occupancy of housing accommodations in a defense area, "being 1717 2nd Ave. Dallas, Texas, (entire house)"; and the tenants having instituted no action the Expediter sought an injunction against further violation of the Act and Regulations applicable, restitution to the tenants, and damages. After a hearing all relief was denied, and appeal is taken by the Expediter.

The court's written opinion, which serves as a finding of the facts, states the following: There is no dispute about $100 per month having been collected instead of $30 claimed to be the maximum registered rental, but the defendant asserts he rented the property out for business and not residential purposes and it was so used. The property is in a zone restricted to business by the city and is in an active commercial neighborhood, a short distance from the State Fair Grounds where all sorts of amusements function not only during the fair, but for the entire year, being a playground for the city which has in excess of 400,000 population. Football contests are there held and nearby are conducted moving picture shows, restaurants, shops, parking spaces, rooming houses and other small businesses. The property is a large two-story residence which was changed into a transient rooming and boarding house by the tenant to whom defendant rented it. Besides the house there

was a driveway on each side of the house to the back of the lot, the whole lot being 100 feet front by 137 feet deep, so that 34 feet on one side was not occupied by the house, and 21 feet on the other. The open spaces were used for parking cars, for each of which $1.00 was charged, except on Sundays when fifty cents was charged. On some days as high as fifty cars were parked, and on some days none. Furniture was offered for sale on the porch, in the house, and from the yard. When the rental contract was made the tenant insisted that it read "for any business purpose" in the informal written contract, and in the formal lease which substituted it. The tenant did not reside on the property; she was a real estate agent and engaged in buying and selling furniture. Her husband had charge of the parking, and shops were contemplated on the vacant parts of the lot. The general conclusion was drawn that the property was from the beginning and continued to be a place for business and not truly within the Rent Control Act and Regulations.

The registration was not put in evidence and apparently it was by some prior owner. The rental by defendant beginning July 5, 1946, was his first occupancy. His agent testifies to have gone at about this time to the O.P.A. office to get an understanding about the lease, but could get no action or information. There were others seeking to rent the vacant spaces, but the accepted tenant desired to rent everything. So the informal contract was for "The large 2-story house and extra lot located at 1717 2nd Avenue., Dallas, Texas. Lot 100 ft. by 137. * * * This property shall be used as lessee sees fit for business as well as dwelling." The formal lease reads: "All that certain large two-story house located at 1717 Second Ave., Dallas. The adjoining lot making a total frontage of 100 ft. on 2nd Ave., and being 137 ft. in depth * * * to be occupied as any kind of business and not otherwise." The evidence shows that the house had nine rooms furnished and used by the lessee for the accommodation of transients, and that defendant, through his agent, knew of this use, and this was the main use of the

house. Though the conduct of a rooming house is a business use, a house so used is a "housing accommodation" within the Price Control Act, for Section 302(f), 50 U.S.C.A.Appendix, § 942(f), defines that term as "any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, hotels, rooming or boarding house accommodations, and other properties used for living or dwelling purposes) * * *." The Regulation for Housing, 10 F.R. 3436, 13528, Sect. 1(b)3, excludes from that Regulation hotels and rooming houses which with the consent of the Administrator have been brought under the control of the Rent Regulation for Hotels and Rooming Houses, but no such consent appears here. And Sect. 1(b)(4) excludes entire structures wherein more than twenty-five rooms are rented or offered for rent; but as only nine such rooms are in this house it is not thereby excluded. The house remained so far as appears, under the registration which was effective when defendant bought it. It was admitted in the trial that the rent it fixed was $30.00 per month, but the exact terms of the registration do not appear. The house itself must have been in the registration, and the whole lot would usually be thought appurtenant to the house while used as a dwelling. A rooming house, however, would not seem to have the same need of the vacant space, and that space could be severed from the house, and if severed would not be a "housing accommodation". In the lease which finally evidenced this rental the language used and the circumstances indicate that the vacant space was considered a thing to itself, to have its own business uses independent of the house, and it was so used and very profitably. Whether the rent collected can be prorated between the rooming house, which was a housing accommodation, and the vacant space which was not a housing accommodation, is a question not decided below or argued here and we will not decide it. There should be a new trial. We are of opinion that on the facts now appearing there was probably an over-

charge as to the house, and all relief should not have been denied. The judgment is reversed for further proceedings not inconsistent with this opinion.