## WHITE v. ALLAN.
### No. 857.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 17, 1949.

Decided Dec. 29, 1949.

Raymond Godbersen, Washington, D. C.,
for appellant.

Everett M. Raffel, Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

A landlord appeals from a judgment de-
nying him possession of premises at 1445

Maryland Avenue, N. E. and awarding tenant-appellee statutory damages for rent overcharges. The landlord had sued for possession for non-payment of rent and on the further ground that the property was being used for dwelling rather than commercial purposes, in violation of the lease between the parties. Tenant sought dismissal of the suit for possession, reformation of the lease, and damages for rental overcharges. The trial judge initially found for the landlord on all counts but later granted a new trial to the tenant on the ground of newly discovered evidence. The second trial, incorporating the testimony of the first trial and a deposition and some additional evidence resulted in judgment for the tenant. Possession was denied the landlord and damages were awarded appellee on her counterclaim in the sum of $513.76, with an attorney's fee. From this judgment the landlord appeals.

The record discloses that on September 24, 1948 the parties signed a lease agreement providing for a rental of $200 per month beginning October 1. It contained a covenant that the lessee would "not use or suffer to be used said premises * * * for any other purpose than commercial purposes." The premises comprise a two story and basement building in a first commercial zone and adjacent to business properties. It was also disclosed that the premises had been earlier used, at least in part, for commercial purposes. The entire building was vacant prior to the commencement of appellee's tenancy on October 1, 1948.[1]

The tenant moved in and set up a rooming house business although she did not take out an occupancy permit for such use. She received at total of $179.00 from her roomers, and at the end of one month she went to the Rent Administrator's Office to complain that her rent was too high. Subsequently, the Rent Administrator held that he had jurisdiction over the premises as housing accommodations and determined the rent ceiling for the entire building at $85.00 per month. It is this rent which she offered to pay and which was refused by the landlord. This proffer and refusal led to the action below.

The trial judge, after consideration of all the evidence of the two trials found, as we have seen, for the tenant. In a written opinion he found that despite the covenant in the lease restricting its use to commercial purposes, "the defendant moved into and occupied the entire building for residential purposes *only* and the plaintiff had knowledge of such residential use and waived the prohibition, in the lease against the same." He also pointed out that the various floors of the premises, prior to the lease in question, had actually been used for housing accommodations. And he further noted that the Rent Administrator had notified the landlord in writing that the property was "housing accommodations" and thus subject to the Rent Act. D.C.Code 1940, § 45—1601 et seq.

The chief error assigned by appellant-landlord relates to the admission of parol evidence to vary the written terms of the lease. Such evidence, however, was admitted apparently to show a waiver of the terms and conditions of the tenancy. Inevitably allied to this question is the applicability of the Rent Act to the premises. For if it is not applicable there would not only be no reason for receiving the evidence; there would also be no warrant for the statutory damages awarded.

The proceeding before the Rent Administrator was under Section 2(1) (c) of the Rent Act, under which the Administrator determines the rent ceilings for housing accommodations not rented on January 1, 1941.[2] From determinations made

1. There was considerable contradictory evidence on this point and the exact date the premises became vacant is not entirely clear. An affidavit states that the family occupying the basement unit "moved out subsequent to September 24." The Agreed Statement of Proceedings and Evidence states that the occupants "lived there until the end of September, 1948 * * *." Appellee's brief states that the basement unit had been rented "until at most a week or so before appellee moved into the house." It was nowhere claimed that the premises were not vacant before appellee moved in.

2. Code 1940, Supp. VI, 45—1602(1) (c).

under this section no appeal lies.[3] We are satisfied there is sufficient evidence in the record to support the conclusion of the trial judge in this respect.

■ The Rent Act defines housing accommodations as: " \* \* \* any building, structure or part thereof, or land appurtenant thereto, or any other real or personal property *rented or offered for rent* for living or dwelling purposes in the District of Columbia (including, but *without limitation,* houses, apartments, hotels, rooming- or boarding-house accommodations, and other properties *used* for living or dwelling purposes) \* \* \*."[4] (Emphasis added.)

This definition seems plainly to prescribe that the *use* of the premises as housing accommodations shall determine whether the Rent Act is to apply. And this seems to be the test even though the property is zoned for commercial use, as is the case here. Even when it is so zoned it must be *used* commercially to be free from the control of the Rent Act. When despite a commercial zoning, property is used for housing accommodations, it comes within the purview of the Act.

■ The actual use of the premises as housing accommodations also governs even though a lease may employ terms other than "housing accommodations" and indicate a different use intention. The Rent Act provides in another section that: "It shall be unlawful, regardless of any agreement, lease, or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent in excess of the maximum-rent ceiling \* \* \*."[5]

This section makes the lease provisions, like the one here involved, subservient to the provisions of the Act. And the test as pointed out above is the use of the property for "housing accommodations," irrespective of the terms of the lease. We are not to be understood as holding that a restriction in a lease providing for a particular use may be changed at will by a tenant and thus commit the landlord to a use not intended by him. In such a case the landlord would have the right to evict the tenant for violation of the covenant of the lease. The situation here, however, as found by the trial court on sufficient evidence, was altogether different. Despite the lease the tenant, immediately on moving in, used the premises as housing accommodations and this was known to the landlord, who thereafter accepted rent and thus waived the covenant of the lease. Under such circumstances, it would be entirely unrealistic to hold that the intent as expressed in the lease should govern over the actual use consented to by the landlord.

On facts quite similar to those before us the United States Court of Appeals for the Fifth Circuit reached the same conclusion in a case under the National Rent Act, 50 U.S.C.A.Appendix, § 901 et seq. (containing a definition of housing accommodations practically identical with that contained in our local Act.) There the lease provided that the premises were "to be occupied as any kind of business and not otherwise." Nevertheless the tenant, with the knowledge of the landlord, proceeded to use the premises as a rooming house. There as here the landlord contended that because of the lease provisions, the premises did not constitute housing accommodations. The court ruled otherwise, saying "Though the conduct of a rooming house is a business use, a house so used is a 'housing accommodation' within the Price Control Act". Woods v. Cohen, 5 Cir., 171 F.2d 888, 889. See also our ruling in Lingo v. Wolfe, 37 A.2d 270.

■ We do not say that such property, zoned commercial as here, can never be decontrolled. The record discloses that in the past at least parts of the premises were used for commercial purposes; and when that was the case, the Rent Act did not apply. And it is clear that when such

---

3. Cox v. Cogswell, D.C.Mun.App.1949, 69 A.2d 659; citing Sager v. Stamps, D.C. Mun.App., 38 A.2d 113; Sager v. Parker, D.C.Mun.App., 55 A.2d 349, affirmed Parker v. Sager, D.C.Cir., 174 F.2d 657.

4. Code 1940, Supp. VI, 45—1611(a).
5. Code 1940, Supp. VI, 45—1605(a).

a property becomes vacant legitimately, there is nothing to prevent an owner from leasing it exclusively for commercial purposes. Then the Rent Act no longer applies unless it is later rerented and used for housing accommodations. There is nothing in the Rent Act to compel an owner to continue to rerent his property for housing purposes. When such a vacancy occurs he may remove it from the rental market, occupy it himself, re-lease it as before, or convert it to commercial use. The owner still retains his basic freedom to contract as he will, subject to the provisions of the Rent Act. But when he permits its actual use as housing accommodations, even though the lease may state otherwise and even though the property was once free from Rent Control, the Rent Act applies.

■ Under the circumstances of this case, even though the evidence complained of may not have been admissible on other grounds, it was clearly admissible in support of the counterclaim, on the question as to whether there had been an evasion of the Rent Act. And in view of what we have said as to the actual use of the premises being controlling, and the landlord's acquiescence in such use, the evidence was material and directly relevant to the issues, and to the decision thereon.

Affirmed.

HOOD, Associate Judge (dissenting).

I think the judgment should be reversed. This property, situated in a business district, zoned for commercial use and adaptable to a commercial use, was leased with an express covenant that it was to be used for commercial purposes only. This provision of the lease must be accepted as determinative of the rights of the parties at the time of the execution of the lease because parol evidence cannot be allowed to contradict the express provision of a written lease. Merritt v. Kay, 54 App.D.C. 152, 295 F. 973; Wigmore, Evidence § 2425 (3d ed.); Restatement, Contracts § 240, comment b; Howenstein Realty Corp. v. Richardson, 77 U.S.App.D.C. 299, 135

F.2d 803. Cf. Lumber Underwriters of New York v. Rife, 237 U.S. 605, 35 S.Ct. 717, 59 L.Ed. 1140. Therefore it must be taken that this property was rented for commercial purposes. Although acceptance of rent by the landlord with knowledge of the breach of the covenant may have resulted in a waiver of the landlord's right to terminate the lease on account of such breach, it did not obliterate the fact that the property was rented for commercial purposes.

The Rent Act applies to housing accommodations only and it defines housing accommodations to be any building, etc., "rented or offered for rent for living or dwelling purposes," and it is my understanding that the purpose for which rented is the test of whether the property is subject to the Rent Act. If use of the premises is the test, as the majority opinion says it is, then this property under this single lease may from time to time, depending on the tenant's use, pass from rent control to noncontrol. The tenant has the right under her lease to use the property for commercial purposes and if tomorrow she commences to so use it I do not believe anyone would contend that it would be then subject to the Rent Act. We thus have the situation where, under the majority opinion, a tenant may shift property from rent control to noncontrol when and if it appears to be advantageous for her to do so. I do not believe the Rent Act contemplated any such shifting back and forth.

Under the majority opinion every landlord of commercial property must ever be on the alert to bring eviction proceedings immediately against any tenant suspected of using the rented premises in whole or in part for dwelling purposes or else take his chance against a claim that his property rented for commercial purposes has suddenly become housing accommodations subject to rent control. The practical result in this case is that property rented for commercial purposes at an agreed rental of $200 per month is converted into housing accommodations at a rental fixed by the Administrator, of $85

per month, which latter sum is less than the landlord formerly received as rent for commercial use of the basement and one room on the first floor.

There is no intimation in the record that this lease was a subterfuge or attempted evasion of the Rent Act, and the trial court made no such finding. In such a case I believe applicability of the Rent Act is to be determined by the express provision of the agreement between the parties and not by a subsequent use by the tenant.