## WEINSTEIN v. RODGER CORP., Inc. et al.

### No. 1236.

Municipal Court of Appeals for the District of Columbia.

Argued July 14, 1952.

Decided Aug. 5, 1952.

Jackson Brodsky, Washington, D. C., with whom Charles Walker, Washington, D. C., was on the brief, for appellant.

Harry L. Ryan, Jr., Washington, D. C., for appellees Rodger Corp., Inc., Revitz and G. M. P. Corp.

Arthur C. Elgin, Washington, D. C., for appellees Gerber.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant, as tenant, brought suit to recover damages for rental overcharges as provided by D.C.Code 1940, Supp. VII, 45-1610. Appellees, as landlords, defended on the ground that the premises were used for a commercial purpose and therefore not subject to rent control. There was a finding and judgment for the appellees, from which appellant brings this appeal.

Appellees, Rodger Corp., Meyer Revitz, Ada Revitz, and the G. M. P. Corp., were

allowed to bring in Simon Gerber and Judith Gerber as third-party defendants on the ground that the latter, by virtue of a contract entered into between these parties on February 15, 1948, had agreed to protect the former and save them harmless from any and all claims, demands, suits, or causes of action of any kind whatsoever. This contract so entered into was for the sale of the apartment house which is involved in this suit. The trial judge made a finding for the third-party defendants on the third-party complaint.

Appellant's sole assignment of error is that the trial court erred in deciding that the apartment was not subject to the District of Columbia Rent Control Act because its major use was commercial.

The record discloses that appellant, a physician, was employed at the Federal Security Agency as a medical pharmacologist. In March 1947 he entered into possession of Apartment #23 of the Alban Towers, of which the different appellees were owners at various times during his occupancy. The agreed rental was $125 for the first six months and $150 for the next twenty-seven months of his tenancy, until the end of November 1949. The record also shows that the rent ceiling on this apartment was $95 a month when used as housing accommodations.

The unit in question consisted of a living room, dining room, sun porch, kitchen, and two bedrooms with connecting bath, along with a hall which ran past the bedrooms into the living room. The apartment was furnished by the appellant with furniture characteristic of the use of each room. The larger bedroom, at the end of the hall, was equipped as a doctor's examining room, complete with cabinets for instruments, examining table, desk, and telephone, and, according to the testimony of appellees' witnesses, a closet fixed up for use as a laboratory.

Appellant testified that this apartment was used by him principally as a private residence and consequently that such use brought this unit within the Rent Control Act. Several of his friends, as did his wife, testified that the apartment was used for residential purposes. Mrs. Weinstein testified that all arrangements for renting the apartment had been made by her husband. He and most of appellees' witnesses testified that she had made all rental arrangements.

According to appellees' witnesses, Apartment #23 had been used for many years prior to appellant's occupancy as the office of the house physician, and it was the policy of the owners of this large apartment house to maintain a suite of offices for the sole purpose of providing a house doctor as a convenience to other tenants in the building. Prior occupants had not lived in this unit, but had used it exclusively as a doctor's office since it was conveniently located on the first floor. There were signs in and around the lobby and building pointing to the "Doctor's Office." The appellant admits that in addition to these signs he had an electric sign in a sun porch window with his name, "Howard Weinstein, M.D.", as well as two other signs bearing the same inscription, one on the street entrance and the other on his apartment door.

Appellant's witnesses, and also several of appellees' witnesses, testified that they were appellant's patients and had gone to this apartment for treatment. Appellant was listed in the telephone directory under two separate numbers. Neither listing gave his residence, but, on the contrary, listed him in his professional capacity at this apartment.

Simon Gerber, who was owner of the apartment house at the time appellant entered into possession, stated in a deposition which is part of the record that prior to appellant's occupancy Apartment #23 had been rented to another doctor. He also deposed that after the other doctor had vacated the apartment it could have been re-rented immediately because they had a list of hundreds of people who wanted an apartment, but that they would not rent it as residential because they wanted a physician in this unit as a service to the other occupants of the building. In addition to giving his approval of the renting of this apartment to appellant, he also granted appellant's request that he be permitted to live

in this apartment temporarily until he was able to secure living accommodations elsewhere. This latter request was granted on the condition that such incidental use of the apartment would not change the status of this unit from commercial to residential. Upon communication with the Rent Administrator, he was informed that it would not.

Appellant introduced evidence by the Assistant General Counsel of the Rent Administrator which showed that the rent ceiling for Apartment #23, if it was being used as housing accommodations, was $95 a month, but that the Administrator's records bore the notation "Doctor's Office."

A Mrs. Morgan, who had acted as intermediary for appellant in securing this apartment, testified that she knew the appellant's wife and at her request "secured an office for Dr. Weinstein in Virginia, but that he could not practice there as the laws of Virginia would not let a graduate of a foreign medical school practice in that state." Mrs. Weinstein then requested Mrs. Morgan to secure office space for appellant either in one of the downtown medical buildings or at Alban Towers where the physician's office was then available. Mrs. Morgan further testified that she had been in appellant's apartment; that the living room was furnished as a "Waiting Room" with living room furniture; and that an asphalt tile floor had been installed in the examining room for appellant.

The trial judge after considering all the evidence found for the appellees. In a written opinion he found that the apartment was rented to appellant as a doctor's office; that the *use* of the premises by the appellant was *primarily* as a doctor's office; and that the *major use* of the premises by the appellant was as a doctor's office. While the parties did not enter into a written lease for this apartment, the trial judge specifically found that the apartment had been *used* as a doctor's office for years prior to appellant's occupancy, and that there was an understanding between appellant and his lessor at the time of occupancy

that the apartment would be so *used*. In concluding, the trial judge said: "The Court finds that the *usage* of the apartment was as a doctor's office, and, therefore, that it was not under the control of the Rent Administrator." (Emphasis supplied.)

Since all these facts have been decided by the trial court, we must not disturb them, resting as they do upon evidence which affords adequate support for the ultimate conclusion drawn.[1]

The Rent Act defines housing accommodations as: " * * * any building, structure or part thereof, * * * rented or offered for rent for living or dwelling purposes in the District of Columbia (including, but without limitation, houses, apartments, hotels, rooming or boardinghouse accommodations, and other properties used for living or dwelling purposes) * * *."[2] This definition seems plainly to prescribe that the *use* of the premises as housing accommodations shall determine whether the Rent Act is to apply.[3]

Whether property is commercial, and therefore free from control, or whether it is residential is ordinarily a question of fact. To determine such an issue, due weight must be given to such factors as whether the premises have been used for commercial or residential purposes; prior leases, acts of the parties, and the time over which the landlord-tenant relationship has existed; whether the commercial portion is incidental to the dwelling portion, or whether the property is viewed primarily as commercial with dwelling accommodations incidental thereto; and whether the two portions can be and have been used independently of the other. Similar language was used in Bellmore v. Baum, D.C.Mun. App., 68 A.2d 588, in speaking of the question of severability. Although we are not dealing with severability in the present case, we think that these considerations are applicable in this type of case as well. Here we are dealing with an entire unit, and the question is whether this apartment as a

1. Woodruff v. Loving Motors, Inc., D.C. Mun.App., 88 A.2d 188.

2. Code 1940, Supp. VII, 45–1611(a).

3. White v. Allan, D.C.Mun.App., 70 A.2d 252.

unit was primarily *used* as commercial or as residential.

█ Considering what we have said above, and from a thorough review of all the facts in this case, we are convinced that the trial judge's findings were adequately supported by the evidence. We must, therefore, affirm.

Affirmed.