Marc B. GOODMAN, Petitioner,

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

Henry R. Graybill, Intervenor.

No. 88–802.

District of Columbia Court of Appeals.

Argued March 16, 1990.

Decided May 3, 1990.

**1294**

Marc B. Goodman, pro se.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief for respondent.

Roger D. Luchs, for intervenor.

Before BELSON, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Goodman asks us to review a decision of the District of Columbia Rental Housing Commission holding that his landlord, Graybill, was entitled to claim exemption from rent stabilization under the so-called "small landlord" provision of the Rental Housing Act. *See* D.C.Code § 45–1516(a)(3) (1981).[1] This section excludes from coverage "any rental unit in any housing accommodation of 4 or fewer units." *Id.*; *see Blacknall v. District of Columbia Rental Housing Commission,* 544 A.2d 710, 711 (D.C.1988). He also contends that he was denied the opportunity to present favorable evidence to the Commission, and that Graybill should not have been granted an exemption because he allegedly failed to give Goodman statutorily-required written notice, before the execution of Goodman's lease, that the property

**1.** This provision has since been recodified and now appears at D.C.Code § 45–2515(a)(3) (1986 Repl.). In this opinion, we refer to the 1981

was not subject to the provisions of the Act.[2]

We agree with the Commission that Graybill was entitled to the exemption, and we hold that Goodman has not presented us with an adequate record to support his claim that his right to present evidence was improperly restricted. The question regarding Graybill's alleged failure to provide Goodman with the statutorily-required notice is more difficult.[3] The point was never directly articulated to the Commission, and the Commission did not rule on it. Although there are some arguably extenuating circumstances in this case for Goodman's failure to preserve the issue, and although we are reluctant to insist on rigorous adherence to procedural niceties in proceedings under a remedial statute which relies in substantial part on lay litigants to enforce it, we are compelled to conclude that the record before us with respect to the landlord's alleged failure to comply with the statutory notice requirement is simply inadequate to enable us to review it in any meaningful way. No error having been demonstrated, we affirm the Commission's decision.

I

THE CONTROVERSY

At all times relevant to this proceeding, Graybill and his wife owned a small apartment building at 4034 Calvert Street, N.W.[4] The building has five apartments, all of which were rented through June 30, 1980. After the resident of the basement apartment gave notice in May 1980 that she was vacating the unit, the Graybills decided not to re-rent it. On September 12, 1980, they filed a "Claim of Exemption Statement" with the Rental Accommodations Office in which they represented under oath that

4034 Calvert Street, N.W. contained four rental units. The Graybills further swore that neither of them had any direct or indirect interest in any other rental unit in the District of Columbia. The Commission found—and there is no evidence to the contrary—that the basement apartment was never again offered for rent.

On December 8, 1980, Goodman rented Apartment 4 on the second floor of the property. In early 1984, a dispute arose over his rent. Goodman filed a petition with the Rental Housing Commission alleging that he had been overcharged and that Graybill was not entitled to claim the "small landlord" exemption because the accommodation contained five rental units rather than four.

The petition precipitated a number of hearings before the agency. A hearing examiner initially ruled for Graybill on the question of coverage, but later convened another hearing and decided favorably to Goodman. The Commission as then constituted (the former Commission) agreed with Goodman that Graybill was not entitled to the exemption, but remanded to the hearing examiner on certain issues relating to the proper remedy. The hearing examiner addressed and decided each of the issues remanded to him, but did not reopen the question of Graybill's right to the exemption since the Commission had already decided the point in Goodman's favor. Both parties appealed.

The present Commission, which had taken office while the case was proceeding on its labyrinthine route through the administrative process, decided not to limit itself to consideration of the issues which had been addressed by the hearing examiner on remand. Rather, the Commission elected to revisit the underlying question whether Graybill was entitled to the exemption. On

version, which was in effect at the time of the controversy.

2. In his rather free-wheeling *pro se* submission, Goodman identifies eighteen issues, most of which are essentially argumentative rearticulations of all or part of one of the three principal questions which we have identified in the text.

3. In this opinion, we sometimes refer to the question whether Goodman received the statu-

tory notice as the "notice issue," and to the question whether Graybill was qualified for the "small landlord" exemption as the "coverage issue."

4. According to the brief for Graybill, the building was sold to Goodman and an associate in 1987.

June 3, 1988, in a comprehensive and thoughtful opinion, the Commission, citing intervening changes in the law, declined to follow its predecessor body's decision as "law of the case" and held instead that Graybill had qualified for the exemption.[5] The Commission ruled, in pertinent part, as follows:

> In reviewing the record, we are mindful that one of the social goals of the Rental Housing Acts is to regulate and in some sense discourage the conversion of rental units to alternate uses. D.C. Code (1981 Ed.), § 45–1502(4), and *Id.* (1986 Repl. Vol. 8), § 45–2502(4). But neither we nor the Court have viewed this policy as an absolute bar to conversion or removal of units from the market. We were careful in *Blacknall, supra,*[6] not to encourage the removal of units from the market, and to discourage the circumvention of rent control that would arise if a landlord were allowed to temporarily remove a unit from the market to acquire an exemption for remaining units. It was our intent in *Blacknall* to state clearly that a small landlord exemption could not be granted if the fifth unit was removed either temporarily or in bad faith.
>
> In this case, we think the record compels a finding that the basement apartment was not temporarily removed from the market or removed in bad faith. This is evidenced by the fact that the unit was kept continuously vacant for more than four years after the claim of exemption was filed and before there was any controversy over the claim of exemption. There is nothing in the record to suggest that the landlord ever

sought to return the basement apartment to the housing market after he had filed his claim of exemption and raised rents in the other four units, and the tenant introduced no evidence to suggest that the basement vacancy was temporary, not continuous, or obtained or maintained in bad faith. We find that the landlord met the evidentiary burden of establishing that the basement unit was continuously vacant for more than four years, and neither rented nor offered for rent during that time. While this may not be a "permanent" removal of the unit from the market,[7] it can hardly be classified as temporary or transitory. The record admits to no other finding. Once this evidence was admitted, the tenant proffered nothing to avoid its inevitable conclusion: that for more than four years this landlord had only four units rented or offered for rent in the residential market. On the evidence of record, we find that the Rent Administrator abused his discretion in failing to make this inevitable finding.

\*    \*    \*    \*    \*    \*

By the tenant's own testimony, he knew of the claim of exemption from a conversation with the landlord approximately two years before he filed his petition. Thus he had ample time to observe whether the basement apartment appeared to be rented or occupied. Furthermore, in the almost four years that this case has been pending with its various appeals and arguments, the tenant has not even suggested that the basement unit was occupied during all of this time.

---

5. The fact that the reconstituted Commission undid the handiwork of its predecessor is not decisive. *See Blacknall, supra,* 544 A.2d at 712 n. 2, in which we sustained another decision of the Commission upholding a small landlord's claim of exemption. In *Blacknall,* as in the present case, the present Commission had overruled a contrary decision by the former Commission. *See also Kritsidimas v. Sheskin,* 411 A.2d 370, 373 (D.C.1980) ("courts have most often found it appropriate to depart from the 'law of the case' where the first ruling is clearly erroneous in light of newly-presented facts *or a change in substantive law.*") (Emphasis added).

6. This is an allusion to the present Commission's decision in *Blacknall,* which we have since described and affirmed in our own *Blacknall* ruling, *supra,* 544 A.2d at 711–13.

7. In spite of this phrase in the Commission's opinion, we think a vacancy which has existed for four years with no end in sight is more permanent than temporary. In the present context, the difference is more semantic than real.

## II

## COVERAGE

The landlord has the burden of proving that he is exempt from the coverage of the Rental Housing Act, and the statutory exemptions are to be narrowly construed. *Revithes v. District of Columbia Rental Housing Commission*, 536 A.2d 1007, 1017 (D.C.1987); *Remin v. District of Columbia Rental Housing Commission*, 471 A.2d 275, 279 (D.C.1984). The Act forecloses sophisticated as well as simple-minded modes of nullification or evasion. *Blacknall, supra*, 544 A.2d at 713 (concurring opinion). Notwithstanding this generous and expansive approach to the construction of a quintessentially remedial enactment, however, it is now established beyond cavil that landlords are permitted to remove rental units from the market, and that although vacant or temporarily withdrawn units are to be counted in determining eligibility for the exemption, permanently withdrawn units are not. *Blacknall, supra*, 544 A.2d at 713; *Revithes, supra*, 536 A.2d at 1016–17 & n. 24.[8]

The Graybills swore in their application for an exemption that there were only four rental units in the building. Both the former Commission and the present one so found. Goodman submitted no evidence to indicate that a fifth unit was on the market, either before he filed his petition or since. An apartment which had not been occupied for almost four years when Goodman filed his petition cannot fairly be characterized as having been "vacant" or "temporarily" withdrawn from the market. *Cf. Revithes, supra*. We therefore conclude that the Commission's finding to the effect that the basement unit had been sufficiently removed from the market is supported by substantial evidence and is not arbitrary or capricious. Accordingly, we must sustain it. *Cohen v. District of Columbia Rental Housing Commission*, 496 A.2d 603, 605 (D.C.1985). Since the unit had been withdrawn from the market for a continuous period of long duration, Graybill was entitled to the exemption. *Blacknall, supra*, 544 A.2d at 713.

Goodman places heavy reliance on our decision in *Revithes, supra*. In that case, we reviewed in some depth the history of the "small landlord" exemption. 536 A.2d at 1013. We emphasized the remedial purposes of the Rental Housing Act, and held that it should be construed in a manner which would discourage its circumvention. *Id.* at 1015–16. We observed, in particular, that

> [t]he exclusion of vacant or temporarily withheld units from the aggregate number of a landlord's holdings would encourage landlords to withdraw rental units from the market in order to obtain higher rents for the remaining units. Such a result is diametrically opposed to the spirit and purpose of the rent control legislation.

*Id.* at 1016. We recognized, however, that "in proper circumstances, landlords are permitted to *permanently* remove rental units from the rental market." *Id.* at 1017 n. 24 (emphasis in original). The Commission had concluded in *Revithes* that the units in question were merely vacant or had been temporarily withheld, and this court sustained that finding.

In the present case, on the other hand, the Commission, relying on the undisputed fact that the basement apartment had been unoccupied for four years prior to the filing of Goodman's petition, expressly found that the removal of the unit from the market was neither temporary nor done in bad faith. That is surely a rational conclusion, and arguably an inescapable one. We

---

8. As the court stated in *White v. Allan*, 70 A.2d 252, 255 (D.C.1949), in a discussion of the World War II rent control law:

> There is nothing in the Rent Act to compel an owner to continue to rerent his property for housing purposes. When such a vacancy occurs, he may remove it from the rental market, occupy it himself, re-lease it as before, or convert it to commercial use. The owner still retains his basic freedom to contract as he will, subject to the provisions of the Rent Act.

Much water has flowed over the dam since 1949, and the war-time statute is not identical to the present one. Nevertheless, the recognition in the *White* opinion of some rather basic rights incident to the ownership of property ought not to be summarily dismissed as obsolete.

therefore conclude that Goodman's reliance on *Revithes* is unavailing, and that the Commission correctly decided in Graybill's favor the question of coverage under the Act.[9]

## III

## SUFFICIENCY OF THE RECORD

Goodman contends that the Commission based its findings on "fictitious" evidence which is not to be found anywhere in the record, and that he was denied the opportunity to present relevant testimony. He appears to contend that a true recitation of what took place before the agency would reveal all manner of skullduggery on the part of the landlord, his counsel, and the present Commission as well. The record, however, does not contain a transcript of any of the proceedings to which he alludes.

"It is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred." *Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982); *see Parker v. Stein*, 557 A.2d 1319, 1323 (D.C.1989). This principle applies with equal force to agency proceedings. *Cohen, supra*, 496 A.2d at 605. We must start with the premise that the agency's decision, like that of a trial court, is correct, and that the burden of demonstrating error is on the petitioner who challenges the decision. *Id.* "We cannot accept the factual representations in [Goodman's] brief as to what happened at the [agency hearings]." *Id.* at 607 n. 5. Graybill denies that Goodman's recitation of events is accurate [10] and, without either a transcript or any stipulation or statement of proceedings and evidence in lieu thereof, we must operate on the assumption that the agency has recited the facts correctly.[11]

## IV

## THE ISSUE OF NOTICE

### A. General Considerations.

Goodman contends that Graybill failed to qualify for the exemption because he did not notify Goodman, before the execution of the lease, that the rent which could be charged for the apartment was not subject to the strictures of the Rental Housing Act. He relies on D.C.Code § 45–1686(b) (Supp. 1980), which then provided [12] that

[p]rior to the execution of a lease or other rental agreement after the effective date of this subchapter, a prospective tenant of any unit exempted under subsection (a) of this section shall receive a notice in writing advising him or her that rent increases for the accommodation are not regulated by the Rent Stabilization Program.

9. The two cases are also distinguishable in another respect. In *Revithes*, there was substantial evidence that the landlord had acted in bad faith. In her Claim of Exemption Statement, she had failed to disclose the fact that she owned three rental units in addition to those for which she sought the exemption. 536 A.2d at 1011. Moreover, acting through her property manager, Mrs. Revithes had retaliatorily evicted one of her tenants after he had complained to the Commission about her practices. *Id.; see Donohoe & Drury, Inc. v. Crowther*, 108 Daily Wash.L.Rptr. 2405 (Super.Ct.D.C.1981). Although, in this case, Goodman has subjected Graybill and his counsel to an avalanche of intemperate accusations of chicanery and deception, and although the hearing examiner found bad faith on Graybill's part on a somewhat collateral matter, the Commission expressly found that bad faith had not been shown with respect to the removal of the unit from the market.

10. According to Graybill, Goodman's "description of what occurred, in most instances, bears little resemblance to what actually did occur." Goodman is even less charitable to Graybill and his attorney: "Counsel has engaged in countless lies below and has instigated his client to obvious perjury and now he has directly and deliberately lied to this Court."

11. Goodman claims that he attempted to order a transcript but that he could not afford the price quoted to him by the Commission. Our Rule 17(b) requires the agency to file a stenographic transcript if one is "available," but, "this does not mean that the agency must bear the cost of its preparation. The agency may require, by rule or regulation, that the appropriate party pay for the transcript." *Cohen, supra*, 496 A.2d at 606 n. 4.

12. This provision has been recodified and now appears in slightly different language at D.C. Code § 45–2515(b) (1986 Repl.).

The statute does not specify the consequences of non-compliance with its provisions, and this court has never directly considered the question. *But see Chaney v. H.J. Turner Real Estate Co.*, TP 20, 347 (March 24, 1989) ("the failure to notify a tenant makes the claim of exemption void until proper notification is given").[13]

Graybill contends that Goodman has waived Graybill's alleged failure to provide him with written notice by not properly asserting it in his various submissions. On the merits, he argues that such alleged failure should not result in the loss of the exemption itself, especially since, according to Graybill, Goodman was in fact aware of the relevant facts for much of the period in question. Although he did not, in his brief, assert that he in fact gave Goodman the required notice, Graybill advised the court, in a letter to the clerk following oral argument, that "Mr. Graybill has never, at any time, accepted or conceded to Mr. Goodman's contention that [Goodman] did not receive such notice." It appears that the parties disagree as to the facts and that no resolution of their disagreement was accomplished during the administrative proceedings.

For reasons detailed below, we reach only the procedural issue.

*B. The remedial character of the Act.*

■ Before we assess Graybill's procedural contentions, we think it appropriate to place them in the proper statutory context. Our Rental Housing Act was designed, in substantial part, to protect low- and moderate-income tenants from the erosion of their income from increased housing costs. D.C.Code § 45–2502(1) (1986 Repl.). The Act is remedial in character. *See Revithes, supra*, 536 A.2d at 1016.

Like other such legislation, it should be liberally construed to achieve its purposes. *See Coles v. Penny*, 174 U.S.App.D.C. 277, 283, 531 F.2d 609, 615 (1976). The wealthiest among us do not live in low- to moderate-income housing, and many complainants in cases brought under the Act are not affluent, nor are they in a position to afford to retain private counsel to conduct protracted proceedings before the Commission and the courts. Like the civil rights statute which the court construed in *Coles*, the Act relies largely on lay persons, operating without legal assistance, to initiate and litigate administrative and judicial proceedings.[14]

■ "[Procedural] technicalities are particularly inappropriate in [such] a statutory scheme." *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972); *Coles, supra*, 174 U.S.App.D.C. at 282–83, 531 F.2d at 614–15. Although neither this court nor the Commission is authorized to overlook jurisdictional requirements in order to vindicate subjective notions of "fairness," it is appropriate for this court, in resolving procedural issues with respect to which reasonable people might differ, to keep in mind the remedial character of the statute and the important role which lay litigants play in its enforcement.

As we have previously noted, the proceedings in this case, now in their seventh calendar year, have an extraordinary and tortured history. On the bedrock question whether Graybill was entitled to the exemption, the hearing examiner ruled first for Graybill and then for Goodman. Following the first internal appeal, the former Commission sustained the examiner's decision denying the exemption but remanded the case for additional findings relating to the proper remedy. After the examiner

---

**13.** The pertinent Regulation provides that failure to provide accurate information in accordance with the statute "may result in the denial of the claim of exemption and/or the imposition of other penalties or sanctions." 14 D.C. M.R. § 4106.6 (1989). *Cf. Boer v. District of Columbia Rental Housing Commission*, 564 A.2d 54, 57–58 (D.C.1989).

**14.** Indeed, a tenant who litigates a meritorious claim under this statutory scheme acts not only on his own behalf, but also as a private attorney general in vindicating the rights of persons of low or moderate income to afford remedial housing. *See Hampton Courts Tenants Ass'n v. District of Columbia Rental Housing Commission*, 573 A.2d 10 (D.C.1990); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

had ruled on the questions which had been remanded to him, both sides appealed to the Commission, which had been reconstituted in the interim. When the present Commissioners decided the second internal appeal, they went beyond the issues on remand, overruled the decision of their predecessors, and held that Graybill was entitled to an exemption after all. It is the present Commission's decision which Goodman now asks us to review.

Graybill claims that during the course of those proceedings, Goodman failed adequately to assert his contentions as to lack of notice both in this court and in the proceedings before the Commission. We consider Goodman's submissions to both bodies.

### C. Preservation of the issue in this court.

■ In requesting this court to set aside the present Commission's decision, Goodman filed a "Petition for Review of Agency Action." In conjunction with that petition, he submitted what he characterized as a "Supplemental Memorandum in Lieu of Brief." Appended to the latter document were several earlier memoranda which Goodman had prepared in support of his own motion for summary reversal and in opposition to Graybill's motion for summary affirmance.[15]

In his petition for review, Goodman did not allude to the issue of lack of notice at all. In his supplemental memorandum, however, he identified one part of the fifteenth of his eighteen "issues presented" as being

> whether the status of an exemption claim is affected by the landlord's violation of the statutory requirement that he advise prospective tenants in writing that a given building is not covered by rent control....

In one of the motions memoranda appended to his "Supplemental Memorandum in Lieu of Brief," Goodman claimed that

> Landlord never gave me or other tenants or prospective tenants the notice required by the Rental Housing acts that the unit[s] are not regulated by rent stabilization.

Our Rule 15(c), which governs this court's review of agency orders, requires that

> [a] concise statement of the nature of the proceedings as to which review is sought and the grounds on which petitioner relies and concerning which error is alleged shall be set forth in the petition.

Our Rule 28(a) directs that briefs in this court include a statement of the issues presented for review.

Obviously, Goodman's submissions reflect something less than flawless formal compliance with these Rules.[16] Nevertheless, Graybill was adequately apprised of Goodman's claim with respect to notice of the exemption. Indeed, Graybill devoted a substantial portion of his brief in this court to the merits of the issue. Our Rules, like the Federal Rules of Civil Procedure, "reject the approach that pleading is a game of skill in which one misstep by counsel [17] may be decisive to the outcome...." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *see also Frain v. District of Columbia,* 572 A.2d 447 at 452 (D.C. March 30, 1990). Given the subject matter of this appeal and our adoption of the approach exemplified by the decisions in *Love* and *Coles,* we conclude that Goodman has not waived, by his filings in this court or by any omission from them, his right to assert his claim that he did not receive notice of Graybill's exemption.

### D. Preservation of the issue before the Commission.

■ In his Tenant Petition which initiated the proceedings before the Commission, Goodman alleged that

**15.** Both of these motions were denied by a motions division of this court.

**16.** Several of Goodman's eighteen "issues" contain one or more discrete sub-issues. Because he was simultaneously protesting so many

things, his contention that he did not receive the statutorily-required notice was not identified for us with much prominence.

**17.** Or, especially, a *pro se* litigant.

[n]o written notice that a claim of exemption was on file was given me as a tenant or prospective tenant as required by section 3407.5 of the D.C. Rental Housing Regulations.[18]

So far as we can determine from the record, this is the sole allusion to receipt or non-receipt by Goodman of the written notice of exemption from rent stabilization.[19] The point was not addressed in the written decisions of the Hearing Examiner, the former Commission, or the present Commission. No determination has been made by any fact-finder as to whether Goodman received notice and, if so, when this occurred.[20] To be sure, Graybill has not affirmatively asserted in any of his submissions that such notice was provided. We suspect that, if it had been, Graybill might well have been sufficiently enterprising to find and avail himself of some opportunity to tell us so. Nevertheless, an appellate court may not assume the responsibility of the agency to make findings of fact, nor may it decide a case, in the absence of agency findings, on the basis of inferences or hunches drawn from what a lawyer said or did not say.

The Supreme Court has instructed us that a reviewing court "usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Commission of Alaska v.* *Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time. *Getty Oil Co. v. Andrus,* 607 F.2d 253, 255–56 (9th Cir.1979); *see also* 4 K.C. Davis, Adminis- trative Law Treatise § 26.7, at 441–44 (1983). This court has likewise held, citing *Aragon, supra,* that contentions not urged at the administrative level may not form the basis for overturning the decision on review. *John D. Neumann Properties, Inc. v. District of Columbia Bd. of Appeals & Review,* 268 A.2d 605, 606 (D.C. 1970). Like our federal colleagues, however, we have recognized that the courts may show a measure of flexibility in this regard when the interests of justice so require. *See, e.g., J. Parreco & Son v. District of Columbia Rental Housing Commission,* 567 A.2d 43, 45 n. 4 (D.C. 1989).[21]

The question is whether the circumstances of this case are sufficiently exceptional to warrant our consideration of an issue which Goodman has failed meaningfully to preserve. We note in that regard that the sequence of events here was certainly unusual. At almost every stage of the proceedings prior to the present Commission's decision in Graybill's favor, Goodman had won the war of the exemption, having successfully urged that Graybill owned five units rather than four. When Goodman

**18.** The cited Regulation now appears at 14 D.C. M.R. § 4106.8 (1989).

**19.** The file does contain the affidavit of Edward J. Turner, a former tenant in the building, stating in pertinent part that "I do not recall ever being presented by the landlord or his agents written notice of his registration under rent control or claim of exemption from rent control explaining the basis for the exemption and the regulations allowing it."

**20.** There is likewise no finding as to whether or when Goodman may have learned, from some source other than a notice from Graybill, that Graybill claimed exemption from coverage.

**21.** A refreshingly candid assessment of the state of the pertinent law is found in Professor Davis' treatise:

> The law is not in accord either with an absolute statement that a reviewing court may not decide an issue not raised before the agency or with an absolute statement that a reviewing court may decide such an issue. The law is that the reviewing court has power to exercise discretion in the light of the circumstances and the court's ideas as to what justice requires.

4 Davis, *supra,* § 26.7, at 444. We agree with Professor Davis that a reviewing court has discretionary authority to consider issues which have not been raised before the agency. We join the federal courts in holding, however, that this authority should be exercised only in exceptional circumstances to avoid manifest injustice. *See, e.g., Getty Oil Co., supra,* 607 F.2d at 256.

eventually lost on this point, this occurred only because the present Commission declined to follow the apparent law of the case when reviewing the examiner's decision on remand.[22] Understandably, during the period when he was the apparent winner with respect to coverage, Goodman's attention was not on notice. Under the law as enunciated by the hearing examiner and by the former Commission, receipt or non-receipt of notice was irrelevant because it had been determined that Graybill owned five units and was thus not entitled to the exemption at all.

Having persuaded the former Commission on the question of coverage, Goodman was not required to cross-appeal with respect to the issue of notice. He did, however, have the right to address that issue before the Commission and to claim lack of statutory notice as an alternate basis for sustaining the hearing examiner's favorable decision. As Justice Brandeis stated for the Court in *United States v. American Railway Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924),

> the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

*Accord, Edwards v. Woods*, 385 A.2d 780, 783 (D.C.1978) ("[i]n pursuing her defense on this appeal, [appellee] is free to urge a rationale different from that utilized by the trial court"). As we have noted, however, Goodman did not address the notice issue in his submissions to the Commission or to the hearing examiner. That being so, he is in no position to complain about the failure of the Commission to decide the question.

Moreover, even if we were to conclude—and we do not—that Goodman was lulled by his string of victories on the issue of coverage into a justifiable belief that he need not press to the Commission his claim of lack of notice, any such lulling would surely have ended when the present Commission sustained Graybill's claim. Goodman had the right at that point to file a motion for reconsideration, *see* 14 D.C.M.R. § 3823.1 (1989), and to bring to the Commission's attention his contention that it had not addressed the notice issue, which he had raised in his initial petition. Goodman filed no such motion, however, and such omissions have been held to be fatal to those seeking judicial review of agency action in comparable situations. *See, e.g., Garment Workers v. Quality Mfg. Co.*, 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975 n. 3, 43 L.Ed.2d 189 (1975); *Glaziers' Local No. 558 v. N.L.R.B.*, 132 U.S.App.D.C. 394, 399–400, 408 F.2d 197, 202–03 (1969).[23]

The Supreme Court's decision in *Garment Workers* is particularly apposite. There, the respondent employer complained that the agency had violated procedural due process by basing its order on a ground not charged or litigated before it. The Court, in an opinion by Justice Brennan, held that the employer's failure to file a motion for reconsideration, as authorized by the agency's Rules, precluded it from asserting its objection to a reviewing court. The Court did not view the alleged ambush of the employer, occasioned by a ruling on grounds not presented to the agency, as constituting "extraordinary circumstances" warranting a departure from the general rule barring presentation to the court of contentions not made before the agency.

**22.** Although we have held that the present Commission's refusal to adhere to the former Commission's ruling was appropriate, *see* pp. 4–5 & n. 5, *supra*, we must likewise recognize that this denouement was an unusual one which a litigant was not bound to anticipate.

**23.** Goodman claims that, during the present Commission's hearings, he was precluded from addressing Graybill's right to the exemption because the Commissioners then viewed that issue as having been resolved in his favor. He claims, in effect, to have been sandbagged by the Commission's ruling on a question which he says he was prevented from developing. Since Goodman has not presented us with an adequate record on the point, however, we are unable to assess his argument. If his description of what occurred is correct, then the filing of a motion for reconsideration would have been especially appropriate, for the ground on which Goodman's arguments had allegedly been excluded—that he had prevailed on coverage—would no longer be tenable.

*Garment Workers, supra,* 420 U.S. at 281 n. 3, 95 S.Ct. at 975 n. 3. In *Garment Workers,* the employer could not have made its argument to the agency before that body had issued its decision, because the basis for the argument—that the agency ruled on grounds which the employer had not had the opportunity to address— had not yet come into existence. It was thus the failure to move for reconsideration, standing alone, that precluded the employer from obtaining judicial review of its due process contention. Unlike the employer in *Garment Workers,* Goodman did have a previous opportunity to address the notice issue before the Commission. He failed either to do so or to petition for reconsideration. The logic of *Garment Workers* therefore applies, *a fortiori,* to the present case.

We recognize that Goodman is not an attorney, and that the niceties of agency procedure may not be easy to master for persons not trained in the law [24] (or even for those who are). As a result of Goodman's failure to present to the Commission his contentions as to the alleged lack of notice, however, we are simply left without a record adequate to enable us to address the question responsibly. Never having been asked to rule on the point, the Commission did not do so. We do not discern here the kind of manifest injustice which would warrant either reversal of the agency's decision or a remand for further proceedings, where the request for such relief is predicated on a theory which the Commission has never had any occasion to address.

### V

### CONCLUSION

For the foregoing reasons, the decision of the Rental Housing Commission is hereby

*Affirmed.*

---

24. Goodman's *pro se* submissions reveal, however, that he is an educated person who has immersed himself in the law relating to the present controversy.