Charlottie L. SIMPSON, Appellant,

v.

## DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS, et al., Appellees.

### No. 90–49.

District of Columbia Court of Appeals.

Argued June 18, 1991.

Decided Oct. 1, 1991.

Avis E. Buchanan, with whom Joseph M. Sellers, Washington, D.C., was on the brief, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

This appeal concerns the discharge of appellant Charlottie Simpson from her employment with Koba Associates, Inc. (Koba) almost eleven years ago.[1] At the time of her dismissal, Ms. Simpson was responsible for looking after her seriously ill father, seventy-six years of age, who was residing with her. According to Ms. Simpson, her father was unable to feed, dress, or otherwise care for himself because he was partially paralyzed from a stroke, blind in one eye, partially blind in the other, and afflicted with diabetes. The substantive question presented is whether, and to what extent, our Human Rights Act, D.C.Code §§ 1-2501 to -2557 (1987), required Koba to accommodate Ms. Simpson's responsibilities to her father by adjusting her working hours.

Following her termination for refusing to accept a change in her starting time, Ms. Simpson filed a complaint with the District's Office of Human Rights (OHR).[2] She claimed that Koba had discriminated against her in employment on account of family responsibilities, in violation of D.C.Code § 1-2512 (1987), by requiring her to work from 8:00 a.m. to 5:00 p.m. instead of her prior hours of 9:30 a.m. to 6:30 p.m. She claimed that working later hours enabled her to dress and feed her father and prepare him for the day, but that the earlier hours would have made it impossible to provide him with the necessary morning care. Ms. Simpson's principal contention was that Koba had an obligation to undertake reasonable efforts to accommodate her schedule to enable her to carry out her responsibilities to her father, and that Koba had failed to do so.[3]

On July 30, 1981, OHR issued a finding of no probable cause to believe that unlaw-

---

1. We have previously had occasion to remark on the need for dispatch in civil rights cases. See, e.g., Harris v. District of Columbia Comm'n on Human Rights, 562 A.2d 625, 626 (D.C.1989). On this occasion, as the reader will learn from the discussion below, the delays resulted from a variety of causes, many or most of which cannot be laid at OHR's door.

2. "OHR ... is an investigating and prosecuting entity as distinguished from the Human Rights

Commission, the agency empowered to adjudicate complaints and issue remedial orders." Anderson v. U.S. Safe Deposit Co., 552 A.2d 859, 860 (D.C.1989).

3. Ms. Simpson initially included in her complaint to OHR an allegation of discrimination based on her race and color (black). She has not maintained this claim on appeal.

ful discrimination against Ms. Simpson had occurred. On April 5, 1982, the Office denied her request for reconsideration. Following a tangled procedural journey which took her to the District of Columbia Commission on Human Rights and to this court on an earlier appeal,[4] Ms. Simpson sought review of OHR's "no probable cause" determination in the Superior Court. The District of Columbia filed a motion for summary judgment, contending that OHR's order was not subject to judicial review, that her complaint was time-barred, and that in any event OHR's finding was not arbitrary or capricious and must therefore be sustained. On December 7, 1989, the trial judge granted the District's motion in a brief order which did not specify which of the District's theories he found to be controlling.[5]

On Ms. Simpson's appeal from that order, the District makes essentially the same contentions as it made before the trial court. We hold that OHR's order is reviewable in the Superior Court. With some reluctance, we further conclude that Ms. Simpson's complaint is not time-barred, but direct the trial court to consider certain equitable issues. On the merits, we remand to the trial court with directions that if the petition is not dismissed for want of equity, OHR be directed to articulate the factual and legal basis for its finding of no probable cause.

## I

### THE FACTS

Although this case has a tortuous history, we discern from the parties' submissions that many of the basic facts are undisputed. Ms. Simpson first came to work for Koba as a secretary in October 1978. Her working day initially began at 8:30 a.m. and ended at 5:30 p.m. On October 29, 1979, while still working her original hours, Ms. Simpson was promoted to the position of Executive Secretary to the Vice–President for Business Development, and her salary was increased accordingly. According to a notation by her supervisor, Fran Lazerow, "[t]his increase is not only well-deserved but will bring into balance salary rates of senior secretarial staff."

In June 1980, the company implemented a "flex-time" work schedule, and Ms. Simpson requested that she be permitted to work from 9:30 a.m. to 6:30 p.m. She explained that she had made this request so that she could care for her father in the morning, before leaving for work. Ms. Lazerow granted her request.[6]

On July 21, 1980, a month after the change in her hours, Ms. Simpson received another promotion. The cumulative effect of the two promotions was to raise her salary by more than twenty percent.

On October 21, 1980, however, Ms. Lazerow told Ms. Simpson that she would have to change her starting time to 8:00 a.m. Ms. Lazerow explained that employees in Ms. Simpson's department had been transferred to other positions in the company, and that Koba needed Ms. Simpson to begin work at an earlier hour because "many of the federal agencies with which we deal report to work on or before 8:00 a.m." Ms. Simpson indicated that she could not agree

---

4. These proceedings are summarized below at pages 396 to 397.

5. Although Rules 52(a) and 56 of the Superior Court's Civil Rules do not by their terms require the trial judge to articulate his reasons for granting summary judgment, an explanation of the basis for the court's decision in doing so is desirable. *Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283 & n. 8 (5th Cir.1984), and *see* authorities there cited. This is especially true where, as here, the motion was based on several discrete grounds. In this case, as in *Myers*,

> [The District] argues in vain [in defense of the judge's order]. It has as little inkling of the reasons for the Order of dismissal as have we.

*Id.* at 283.

6. According to Ms. Lazerow, Ms. Simpson had a history of arriving late for work. Koba's President stated that Ms. Simpson's request to begin work at a later hour was approved because she "had an absolutely abysmal record of attendance and management felt that it could help her comply with corporate policy [to arrive for work on time] by permitting her to arrive at 9:30." Although Ms. Simpson was terminated for refusing to accept her new working hours, Koba devoted much of its defense before OHR to her allegedly habitual lack of punctuality.

to the change in her hours, and Ms. Lazerow advised her verbally that she would be discharged.

Thereafter, on November 3, 1980, Ms. Simpson received a termination letter in which Ms. Lazerow stated in pertinent part that "your refusal to begin the work day at 8:00 a.m. each day left me with no alternative but to separate you from Koba Associates, and to hire another individual that would work the hours required." [7]

On June 19, 1981, Ms. Simpson filed a complaint with OHR alleging in pertinent part that Koba had made no attempt to accommodate her need for later working hours. OHR instituted an investigation of the complaint and eventually held a "fact-finding conference." Following that conference, the OHR investigator prepared a final report, in which she summarized the facts and recommended that the office make a finding of no probable cause. On July 30, 1981, in conformity with the investigator's recommendation, the Director of OHR notified Ms. Simpson that "no probable cause has been found for crediting the complaint, and it so ordered." On October 5, 1981, Ms. Simpson asked OHR to reconsider its determination, but on April 5, 1982, the Director reaffirmed it.

On April 20, 1982, Ms. Simpson petitioned this court for review of OHR's dismissal of her complaint. The District filed a motion to dismiss the petition for lack of jurisdiction, but a motions division of this court denied the motion in an unpublished order. In October 1982, however, the parties filed a stipulation requesting dismissal of the appeal without prejudice. This request was based on an agreement that the Commission on Human Rights should be requested to review the determination of no probable cause. On October 12, 1982, in accordance with this stipulation, this court issued an unpublished order dismissing the appeal. On October 4, 1983, however, the Corporation Counsel issued an opinion in which she concluded that the Commission lacked the authority to review the "no probable cause" determination made by the Office of Human Rights. Accordingly, Ms. Simpson's appeal to this court was reinstated.

On October 30, 1985, citing *Lamont v. Rogers*, 479 A.2d 1274, 1278 (D.C.1984), this court issued a third unpublished order dismissing the reinstated appeal for lack of jurisdiction. The court held that the proceeding before OHR was not a contested case within the meaning of the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1-1501 to 1-1510 (1981). The order of dismissal was without prejudice to Ms. Simpson's request for relief in an appropriate forum. Nearly three years later, on September 23, 1988, Ms. Simpson filed a complaint in the Superior Court seeking review of OHR's 1982 dismissal of her administrative complaint. After the trial court granted summary judgment dismissing the complaint, Ms. Simpson filed this appeal.

## II

### LEGAL DISCUSSION

#### A. The Human Rights Act.

The District of Columbia Human Rights Act, D.C.Code §§ 1-2501 to -2557 (1987), provides both administrative and judicial remedies for discrimination proscribed by the Act. An aggrieved individual may elect to file a complaint with OHR or in any court of competent jurisdiction, *see Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C.1981), within one year of the occurrence or discovery of an unlawful discriminatory practice. *See* D.C.Code §§ 1-2544(a), 1-2556(a); *Davis v. Potomac Elec. Power Co.*, 449 A.2d 278, 280-81 (D.C.1982). When a complaint is filed with OHR, that Office must conduct an investi-

---

7. According to the affidavit of Joseph M.E. Roberts, an economist who then held responsibilities for African trade in Koba's International Division, Mr. Roberts asked that Ms. Simpson, of whom he had a favorable opinion, be transferred to his Division, where she could work later hours. His request was denied, however, and he was advised that Ms. Simpson had been discharged. Koba claimed, on the other hand, that Ms. Simpson had failed to cooperate with the company's attempts to transfer her to a position compatible with the hours which she wished to work.

gation to determine whether it has jurisdiction and whether there is probable cause to believe that the respondent has engaged in an unlawful discriminatory practice. D.C.Code § 1–2545(a)–(b).

If OHR concludes that it lacks jurisdiction, or that there is no probable cause to believe that the respondent has engaged in unlawful discrimination, then the Director must issue an order dismissing the complaint. D.C.Code § 1–2545(c).[8] The claimant may seek reconsideration of the agency's determination by filing a written application to the Director within 30 days of receipt of the order. *See Brown, supra,* 425 A.2d at 1312.

█ Unlike some other civil rights statutes, however, *see, e.g.,* 42 U.S.C. § 2000e–5(f), our Human Rights Act does not authorize the complainant to bring suit on his or her own behalf if the agency declines or fails to do so. The filing of a complaint with the OHR constitutes an election of remedies. *Brown, supra,* 425 A.2d at 1311. Unless the Office dismisses the complaint on grounds of administrative convenience, or the complainant withdraws the complaint before an administrative decree is rendered, an adverse decision by OHR effectively disposes of the complainant's claim, subject to whatever judicial review may be available. *Id.* at 1311–12.

### B. Judicial Review.

█ The District contends that OHR's finding of no probable cause is not subject to judicial review. We disagree.

It is true that the Human Rights Act does not explicitly provide for judicial review of OHR's findings. The only provision of the Act pertaining to judicial review is found in D.C.Code § 1–2554, which provides that

[a]ny person suffering a legal wrong, or adversely affected or aggrieved by, an order or decision of the *Commission* in a matter, pursuant to the provisions of this chapter is entitled to a judicial review

thereof, *in accordance with § 1–1510,*[9] upon filing, in the District of Columbia Court of Appeals, a written petition for such review.

(Emphasis added). Section 1–1510(a) states in relevant part that:

[a]ny person suffering a legal wrong, . . . by an order or decision of . . . an *agency in a contested case,* is entitled to a judicial review . . . [by] the District of Columbia Court of Appeals.

(Emphasis added). We held in *Lamont v. Rogers, supra,* 479 A.2d at 1276–78, that a finding by OHR of no probable cause was not an agency decision in a "contested case" in which a "trial-type hearing" is required, and that such a finding is therefore not reviewable in this court. When we dismissed the petition for review in *Lamont* for lack of jurisdiction, however, we explicitly stated that the petitioner's "only recourse is a civil action in the Superior Court," *id.* at 1278, and that the dismissal was without prejudice to the filing of such an action. *Id.* If *Lamont* was not a specific holding that the Superior Court has jurisdiction—and it does not appear that this precise question was before the court—that decision nevertheless strongly suggests that review in that court is available. Indeed, it was on the strength of *Lamont* that this court issued its order of October 22, 1985, dismissing Ms. Simpson's petition for review in this case for lack of jurisdiction "without prejudice to petitioner's request for relief in an appropriate forum."

We find altogether unpersuasive the District's contention that no court has authority to review a finding of no probable cause by OHR. Such a finding, without review, would conclusively dispose of Ms. Simpson's claim on the merits. Ms. Simpson contends that, in finding no probable cause, OHR made a clear mistake of law. As the Supreme Court explained almost ninety years ago, the courts in such a case

---

8. If, on the other hand, OHR determines that probable cause exists, a hearing is scheduled before the Human Rights Commission. *See* D.C.Code §§ 1–2550 to –2553.

9. Section 1–1510 is, of course, a part of the DCAPA.

*must* have power in a proper proceeding to grant relief. Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law and is in violation of the rights of the individual.

*American School of Magnetic Healing v. McAnnulty,* 187 U.S. 94, 110, 23 S.Ct. 33, 39, 47 L.Ed. 90 (1902) (emphasis added).

"[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Rusk v. Cort,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 794–95, 7 L.Ed.2d 809 (1962)); *see* KENNETH C. DAVIS, ADMINISTRATIVE LAW TREATISE, § 28:11, at 312 (1984).

> "The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent."

*Abbott Labs., supra,* 387 U.S. at 141, 87 S.Ct. at 1511 (quoting JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 357 (1965)). As Judge Bork explained for the court in *Carlin v. McKean,* 262 U.S.App.D.C. 212, 214, 823 F.2d 620, 622 (1987), *cert. denied,* 484 U.S. 1046, 108 S.Ct. 784, 98 L.Ed.2d 870 (1988),

> [t]he actions of government agencies are normally presumed to be subject to judicial review unless Congress has precluded review or a court would have no law to apply to test the legality of the agency's actions.

(Citations and internal quotation marks omitted).

"The right to equal opportunity without discrimination based on race or other such invidious ground is protected by a policy to which both this nation and its capital city have accorded the highest priority." *Harris, supra,* 562 A.2d at 626 (citations and internal quotation marks omitted). Civil rights statutes are remedial and must be generously construed. *See, e.g., Trafficante v. Metropolitan Life Ins. Co.,* 409

U.S. 205, 211, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972); *Coles v. Penny,* 174 U.S.App. D.C. 277, 283, 531 F.2d 609, 615 (1976). We find implausible the notion that the Council of the District of Columbia intended to empower an administrative officer to doom to perpetual oblivion a complaint of unlawful discrimination, without his or her order being subject to any judicial review whatever. When our elected representatives wish to foreclose judicial review, they know very well how to say so. *See, e.g.,* D.C.Code § 1–1508 (1987) ("... the refusal of the Mayor or any agency to issue a declaratory order shall not be subject to review"). They did not elect to say so here.

Relying on *Honig v. District of Columbia Office of Human Rights,* 388 A.2d 887, 889 (D.C.1978), the District contends that our Human Rights Act is modelled on the National Labor Relations Act (NLRA), and that under the NLRA courts will not review the exercise of the National Labor Relations Board's (NLRB's) "prosecutorial discretion." *See, e.g. Hourihan v. NLRB,* 91 U.S.App.D.C. 316, 201 F.2d 187 (1952), *cert. denied,* 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953). This might very well be relevant if OHR had dismissed Ms. Simpson's complaint on grounds of administrative convenience, *see Brown, supra,* 425 A.2d at 1311–12, or if that Office had made a policy determination not to exercise jurisdiction in a case in which the employer lacked a sufficient nexus with the District. *See Honig, supra,* 388 A.2d at 887–88. In such circumstances, Ms. Simpson would have the right to bring suit on her own behalf. *Brown, supra,* 425 A.2d at 1311–12. Courts are understandably and rightly reluctant to tell an agency when it should institute enforcement proceedings and when it should not, for "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Heckler v. Chaney,* 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985).

In the present case, however, OHR was not purporting to exercise "prosecutorial discretion," nor did it reject Ms. Simpson's

complaint on the ground that it lacked resources for enforcement. Rather, OHR found that there was no probable cause to believe that the Human Rights Act had been violated. Whether right or wrong, that determination was not one of the kind to which the doctrine embraced by the District can reasonably be applied. We conclude that OHR's determination is subject to judicial review.

### C. Timeliness.

#### 1. The applicable limitations period.

The District contends that Ms. Simpson's petition for review in the Superior Court was barred by the one-year statute of limitations applicable to the filing of discrimination complaints. See § 1–2544(a). In the alternative, the District maintains that Ms. Simpson was required to file her petition for review within thirty days of this court's dismissal of her reinstated appeal. See Agency Review Rule 1 of the Civil Rules of the Superior Court. Both contentions are entirely without merit.

■ Section 1–2544(a) provides, with an exception not relevant here, that "[a]ny complaint under this chapter shall be filed with the Office within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof...." There is no question that Ms. Simpson complied with this provision. The alleged discrimination took place on or about November 3, 1980. Ms. Simpson filed her complaint on June 19, 1981. The statute begins to run with the occurrence or discovery of the *discriminatory practice*, and its applicability ends with the filing of the complaint with OHR. Section 1–2544(a) does not say a single word about how soon after the *agency* acts the complainant must petition the Superior Court for review.

■ The Superior Court's Agency Review Rule 1 provides that a petition for review from a decision of an agency (usually the Office of Employee Appeals) under the District of Columbia Comprehensive Merit Personnel Act, D.C.Code § 1–606.3(d) (1987), shall be filed "within 30 days after formal notice of the order or decision sought to be reviewed, unless a different time is prescribed by statute." Ms. Simpson was an employee of a privately owned company, and her petition had no relation whatever to the District's merit system. Accordingly, the Superior Court Civil Rule on which the District purports to rely does not apply to this case.[10]

We recently had occasion to reiterate that

"[i]n interpreting a statute, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45 (D.C.1989) (citations omitted). "The words used [in the statute], even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing." *Id.* at 46 (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (per Learned Hand, J.), *aff'd*, 326 U.S. 404 [66 S.Ct. 193, 90 L.Ed. 165], (1945)).... Although "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary," *Parreco, supra*, 567 A.2d at 46 (quoting *Cabell, supra*, 148 F.2d at 739), it is useful to have one around.

*Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1235 (D.C.1990). With respect to statutes of limitation, too, "[t]he general rule is that the language of the act must prevail, and no reasons based on apparent inconvenience or hardship can justify a departure from it." *Amy v. Watertown No. 2*, 130 U.S. 320, 324, 9 S.Ct. 537, 538, 32 L.Ed. 953 (1889).

Moreover, "the statute of limitations is not such a meritorious defense that either

---

**10.** The District also asks us to consider our own Rule 15(a), which requires that petitions for review of agency decisions by this court shall be filed within thirty days. That Rule governs procedures before this court. It has no bearing on the proper time to seek review in the Superior Court.

the law or the facts should be strained in aid of it." *Guy F. Atkinson Co. v. State,* 66 Wash.2d 570, 573, 403 P.2d 880, 882 (1965). The provisions on which the District relies would have to be distorted beyond recognition—indeed, they would have to be rewritten—to support the results which the District seeks to achieve. The District argues that "[a]ll of the policies which support application of a 30 day time limit to personnel cases and to contested cases apply here." If this is so—and it may well be—then the legislature, or perhaps the court in its rulemaking capacity, has the authority to select an appropriate limitation period. But like the Supreme Court in *West Virginia Univ. Hosps., Inc. v. Casey,* — U.S. ——, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991), we

> reject this ... argument for the same reason that Justice Brandeis, writing for the Court, once rejected a similar (though less explicit) argument by the United States:
>
> > "[The statute's] language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 250–251 [46 S.Ct. 248, 250, 70 L.Ed. 566] (1926).

A decent respect for the separation of powers between the three branches of government precludes us from undertaking, at the District's bidding as at the instance of any litigant, a legislative (or at least non-adjudicative) task.[11]

**11.** We agree with the District that to permit Ms. Simpson to interpose a three-year delay in a case between the OHR finding and the initiation of judicial review is difficult to reconcile with the emphasis placed in the statute and in our cases on proceeding with dispatch. *See Harris, supra,* 562 A.2d at 626. As this court observed in *Davis v. Potomac Elec. Power Co.,* 449 A.2d 278, 280 (D.C.1982),

> [c]laims of discrimination advanced by employees against their employers are apt to

## 2. The date when Ms. Simpson's right of action accrued.

Since the alternative statute and court rules suggested by the District have no application, we agree with Ms. Simpson that the issue before us is governed by D.C.Code § 12–301(8) (1989). Section 12–301 states in pertinent part:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> > (8) for which a limitation is not otherwise prescribed—3 years.

The more difficult question embraced in the District's claim that the action is time-barred relates to the identification of the date on which Ms. Simpson's action accrued within the meaning of Section 12–301.

OHR issued its original determination of no "probable cause" on July 30, 1981, and denied Ms. Simpson's petition for reconsideration on April 5, 1982. Unless the running of the statute was in some manner tolled, Ms. Simpson was obliged to file her petition for review in the Superior Court, at the latest, in April 1985. This court held in *Bond v. Serano,* 566 A.2d 47, 48–49 (D.C.1989) (per curiam) that the filing of a personal injury action in the United States District Court within the three-year statutory limitation period, which action was subsequently dismissed for lack of subject matter jurisdiction, did not result in "equitable tolling," and thus did not render timely a complaint filed in the Superior Court shortly after dismissal of the federal suit, but more than three years after the date or discovery of the injury. *See also id.* at 49–57 (Farrell, J., concurring); *Namerdy v. Generalcar,* 217 A.2d 109, 113

> become stale quickly because the evidence necessary to support or refute such claims often consists of subjective estimations of the discriminatory "climate" at the workplace as well as business records and other forms of impermanent data.

The decision whether to eliminate the problem by enacting a shorter statute of limitations has not, however, been assigned to the judicial branch, at least in its adjudicatory capacity.

(D.C.1966).[12] The District argues, not implausibly, that the same result should follow here.[13]

Ms. Simpson attempts to distinguish *Bond* upon the ground that this court's decision in *Lamont* made a substantive change in the law, and that prior to *Lamont* claimants had no reason to believe that they were obliged to (or even had the right to) seek review of OHR decisions in the Superior Court. According to Ms. Simpson, "courts have recognized the inappropriateness and the inequity of applying a new statute of limitations to some preexisting claims, and have permitted litigants to proceed where [their actions] would otherwise be time-barred, or where substantial changes in the law on which parties relied have occurred." *See, e.g., Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–57, 30 L.Ed.2d 296 (1971). Her position would be an arguable one even if this were a conventional action at law for damages, in which the plaintiff would presumptively be represented by counsel. Although *Lamont* did not overrule prior precedent, and was certainly consistent with the statutory "contested case" requirement, that decision could reasonably be characterized as having decided "an issue of first impression whose resolution was not clearly foreshadowed." *Huson, supra,* 404 U.S. at 106, 92 S.Ct. at 355. The uncertainty as to which tribunal should review OHR's decision is reflected by the parties' stipulated dismissal of the appeal to enable the Human Rights Commission to consider the matter, and the subsequent opinion of the Corporation Counsel which precluded pursuit of that avenue. More-

over, the initial denial by a motions panel of this court of OHR's motion to dismiss the petition for review may have reinforced Ms. Simpson's belief that she had come to the correct tribunal. *See Frain v. District of Columbia,* 572 A.2d 447, 450–51 (D.C.1990).

We agree with the Supreme Court of Alaska that where two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action. *Safeco Inc. Co. of Am. v. Honeywell,* 639 P.2d 996, 1001 (Alaska 1981). "If there is any reasonable doubt in a statute of limitations problem, the [c]ourt will resolve the question in favor of the complaint standing and against the challenge." *Saunders v. Holloway Const. Co., Inc.,* 724 F.Supp. 640, 642 (W.D.Ark.1989). Accordingly, even if this were not a civil rights case brought under a statutory scheme in which lay complainants are expected to represent themselves, there would be substantial reason to question whether the *Bond* decision should control.

But quite aside from the comparative novelty of *Lamont,* there are other considerations of basic fairness which, in our view, preclude us from holding that Ms. Simpson was required to anticipate in advance that this court would decline to review her case, and that she must therefore cast her lot with the Superior Court instead. The Human Rights Act, like Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* "relies upon laymen, operating without legal assistance, to initiate both administrative complaints and law-

---

**12.** As we pointed out in *Bond, supra,* 566 A.2d at 49 & n. 3, however, the highest courts of several jurisdictions have reached a contrary conclusion. *See, e.g., Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327 (1985); *Galligan v. Westfield Centre Serv. Inc.,* 82 N.J. 188, 412 A.2d 122 (1980).

**13.** The District also cites *Anderson v. U.S. Safe Deposit Co.,* 552 A.2d 859, 861–63 (D.C.1989) for the proposition that the statute of limitations was not tolled. In *Anderson,* however, the question presented was completely different from the one under consideration here. It was there urged that the filing of an administrative complaint with OHR tolled the running of the one-year period for the institution of a substantive

discrimination suit pursuant to section 1–2544(a). Having held in *Brown, supra,* 425 A.2d at 1311, that the filing of an administrative complaint constituted an election of remedies, this court declined to read into the Human Rights Act a tolling doctrine which would have undercut that decision. *Anderson* did not present the situation which confronts us here for Ms. Simpson's claim of tolling is not based on a change of mind as to whether to pursue an administrative or legal remedy, but on her filing of her petition for review in the Court of Appeals rather than the Superior Court because, according to her, she could not anticipate the *Lamont* decision.

suits." *Coles, supra,* 174 U.S.App.D.C. at 282, 531 F.2d at 614; *see also Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1299 (D.C.1990) (citing *Coles* and reaching the same conclusion with respect to the Rental Housing Act). "[Procedural] technicalities are particularly inappropriate in [such] a statutory scheme." *Goodman, supra,* 573 A.2d at 1299 (quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)). Accordingly, as the court explained in *Coles,*

> courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party.... That approach reflects not only the manifest importance of Title VII rights [14] to complaining parties, but also the broad national commitment [15] to eliminating such discrimination and the importance of private suits in fulfilling that commitment.... As the statutory language of the notice provision does not clearly compel any particular resolution of the issue before us, we should seek a reading of the statute which effectuates

14. Or, in this case, of rights secured by our Human Rights Act.

15. This city's commitment to equal opportunity is as broad and as deep as the nation's. *See generally Harris, supra.*

16. *Accord, Goodman, supra,* 573 A.2d at 1299; *Tenants of 2301 E Street, N.W. v. District of Columbia Rental Hous. Comm'n,* 580 A.2d 622, 628 n. 11 (D.C.1990).

17. Although, for privacy reasons, we elect not to disclose her salary, the record fully supports our characterization of it.

18. An attorney entered an appearance on her behalf *after* OHR had made a finding of no probable cause.

19. There are two additional considerations which support our view that Ms. Simpson's action did not accrue until this court dismissed her reinstated petition. First, we have held that where an agency fails to provide statutorily required notice to an employee of the body which an administrative appeal should be taken, "the proper course is to remand [the case to that body] without prejudice for the earlier failure to appeal to [that body]. *District of Columbia v.*

rather than frustrates the major purpose of the legislative draftsmen.

*Id.* at 283, 531 F.2d at 615 (citations and internal quotation marks omitted).[16]

We think that the reasoning of *Coles, Goodman* and the authorities cited in those cases is dispositive here. Ms. Simpson was a secretary. Her income was modest.[17] Her disabled father resided with her. Like many other complainants in such cases, she was hardly "in a position to afford to retain private counsel to conduct protracted proceedings before the [agency] and the courts." *Goodman, supra,* 573 A.2d at 1299. She filed her initial complaint with OHR *pro se.*[18] Although she now has the good fortune to be represented, presumably without charge, by the Washington Lawyers' Committee for Civil Rights Under Law, her securing of such representation cannot retroactively require her to have obtained a crystal ball many years earlier and to have predicted, at her peril, the development of this court's "contested case" jurisprudence. We conclude for all of these reasons [19] that *Bond* is distinguishable and that Ms. Simpson's action did not accrue until October 30, 1985, when this court dismissed without prejudice her petition for review.[20]

*Daniels,* 523 A.2d 569, 571 (D.C.1987) (per curiam). Second, in light of the joint attempts of the parties to obtain review of OHR's disposition by the Human Rights Commission, and the subsequent reinstatement of the appeal without opposition from the District after the Corporation Counsel concluded that the Commission was without authority to act, it would be inequitable to permit the District to claim after the fact that the statute of limitations was running while these consensual arrangements were being made. Such a result would permit Ms. Simpson to be effectively ambushed.

20. The District contends in the alternative that Ms. Simpson's action accrued on the day that *Lamont* was decided. We find this contention altogether unpersuasive. Persons who file complaints before agencies cannot be expected to be on the mailing list for our slip opinions, or to know each time this court or some other court decides a case relevant to their own. This is especially true where, as in this case, the statutory scheme contemplates the filing of complaints by lay complainants. Moreover, after *Lamont* was decided, the District initially contended that the decision was applicable only to cases involving employees of the District or its agencies. The District has offered no authority

### 3. Lack of due diligence.

The District contends that, even if Ms. Simpson's right of action did not accrue until this court dismissed her reinstated petition, the delay of almost three years in the filing of her complaint prejudiced the employer's rights. Specifically, the District points out that those jurisdictions which, contrary to *Bond v. Serano, supra,* generally recognize "equitable tolling," nevertheless require reasonable and good faith conduct on the part of the plaintiff in prosecuting the first action and diligence in filing the second. *See, e.g., Hosogai v. Kadota,* 145 Ariz. 227, 230, 700 P.2d 1327, 1333 (1985).[21] It is the District's position— a plausible one—that a three year delay, after all that had occurred before, is inconsistent with due diligence. In reply, Ms. Simpson argues that it is

> axiomatic that a statute of limitations does not require that an action be filed at a specific time within the limitations period. Whether a plaintiff files a claim on the first day of the limitations period or the last, the claim is deemed timely.

We think Ms. Simpson's response oversimplifies the problem. In contesting the District's claim that her petition was time-barred, Ms. Simpson is, at least arguably, forced to rely on a contention that equitable considerations require the tolling of the three-year statute of limitations. Her petition for review in the Superior Court was filed more than three years after OHR's finding of no probable cause, and Ms. Simpson can prevail only if her prompt petition to this court, combined with the uncertain state of the law as to which body could review that finding, would render it inequitable to hold that the statute began to run at the time of the determination.

■ But it is a familiar maxim of equity that "[s]he who demands equity must do

it." *Gary v. Dane,* 133 U.S.App.D.C. 397, 401, 411 F.2d 711, 715 (1969). The separate though related doctrine of laches, which is founded on the principle that equity aids the vigilant rather than those who slumber on their rights, is designed to promote diligence and prevent enforcement of stale claims. *Powell v. Zuckert,* 125 U.S.App. D.C. 55, 57, 366 F.2d 634, 636 (1966). Ms. Simpson is not seeking equitable relief in her petition for review, so the doctrine of laches is not directly applicable. Nevertheless, equitable considerations lie at the heart of her overall submission. Accordingly, we are of the opinion that the cited equitable doctrines are instructive at least by analogy.

It appears from the available record, however, that the District did not make to the trial court the equitable argument now under consideration. The District stated in its brief to the trial judge that

> [in] the event this [c]ourt finds that the three year statute of limitations applies to plaintiff's claim and this statute of limitations begins to run from the date her appeal was dismissed (October 30, 1985) and not the date of the *Lamont* decision, the three year statute of limitations will still have run against [certain defendants].

No separate contention as to lack of due diligence was included.

■ We may, of course, affirm the judgment for any reason, whether or not it was raised by the appellee or relied upon by the trial judge. *See, e.g., In re O.L.,* 584 A.2d 1230, 1232 & n. 6 (D.C.1990). In the present case, however, such a course of action would be premature. Delay on a litigant's part will not automatically disqualify her from relying on equitable principles. The elements of laches are (1) undue delay, (2) unexplained delay, and (3)

---

supporting its theory that court decisions in unrelated cases involving different parties can trigger the running of the statute of limitations, and we know of none.

**21.** The District also states in a footnote that Ms. Simpson's former employer, Koba, was not named as a party or served in Ms. Simpson's civil action in the Superior Court. The parties have not addressed the legal consequences of this omission, and we comment only that a party ordinarily cannot be bound by a decision with respect to which that party has never had an opportunity to be heard. We expect that the trial court will explore on remand whether Koba should have been joined and, if so, whether its absence from the litigation defeats or impairs Ms. Simpson's claims.

injustice to the other party. *Schmittinger v. Schmittinger*, 404 A.2d 967, 970 (D.C.1979).

■ The record before the court does not enable us to assess the presence or absence of at least the second and third elements. Further factual exploration relevant to any reasons for Ms. Simpson's delay and of any prejudice to the District and Koba is required. Fact-finding is not a proper function of an appellate court. Accordingly, we decline to affirm the summary judgment in the District's favor on the basis of this equitable argument. We do direct that on remand, the trial court address the District's equitable argument if it has been properly preserved.

### D. The finding of no probable cause.

■ Finally, the District contends that even if OHR's determination of no probable cause is subject to judicial review, and even if the petition was timely filed, the agency's finding was correct on the merits and that the trial court properly sustained it. Because neither the OHR investigator nor the agency's Director meaningfully addressed the basic legal question presented by Ms. Simpson, however, we are constrained to disagree.

In her written decision dated July 30, 1981, the Director stated only that dismissal was required because no probable cause for crediting the complaint had been found during the course of the investigation. Her decision included no discussion of the pertinent facts or law. Accordingly, in attempting to determine the reasons for OHR's decision, we must look to the final report of OHR's investigator. It is that report on which the Director presumably relied.

The investigator's final report contained a brief summary of each party's view of the case, which was followed by eight findings of fact, three paragraphs analyzing these facts, and a conclusion recommending a finding of no probable cause. Most of the findings, as well as all three paragraphs analyzing the facts, related to Ms.

Simpson's claim of racial discrimination, which is not before us on this appeal. Only one finding even touched upon her claim of discrimination based on family responsibilities. In that finding, the investigator merely took note of Ms. Simpson's belief that she had initially been permitted to change her working hours because of her father's physical condition.

The investigator made no finding at all with respect to the nature of Ms. Simpson's responsibilities to her father, or as to whether any attempt had been made by Koba to accommodate Ms. Simpson's schedule so that she could carry out those responsibilities. The investigator did not comment on the affidavit of Joseph Roberts, who asserted that he had a position available within the Koba organization for which Ms. Simpson was qualified, and in which he stated that she could have retained her later starting hours, nor did the investigator attempt to resolve a number of related factual disputes. Neither the Director's determination nor the investigator's final report contains any discussion of the nature of an employer's obligation under the proscription of discrimination on account of "family responsibilities."

The District of Columbia is apparently the only jurisdiction in the United States which prohibits discrimination of this kind. *See* H. PERRITT, EMPLOYEE DISMISSAL LAW AND PRACTICE 545–571 (2d ed. 1987). Our statute provides that

"Family responsibilities" means the state of being, or the potential to become, a contributor to the support of a person or persons in a dependent relationship, irrespective of their number, including the state of being the subject of an order of withholding or similar proceedings for the purpose of paying child support or a debt related to child support.

D.C.Code § 1–2502(12) (1987). The statute does not reveal whether the family responsibilities must rise to the level of a legal duty (*e.g.*, to pay child support) or whether a moral obligation to care for an ill parent

is sufficient.[22] It contains no explicit requirement that an employer accommodate an employee's working schedule so that the employee can discharge his or her "family responsibilities." *Cf.* § 1–2502(23) ("'Physical handicap' means a bodily or mental disablement which may be the result of injury, illness or congenital condition *for which reasonable accommodation can be made*") (emphasis added).

Ms. Simpson argues that

[a]lthough nothing in the legislative history of the Act offers guidance concerning the appropriate standard to use, an employee with family responsibilities most closely resembles the employee who is unavailable for particular job responsibilities because of a disability. She relies on *Carter v. Bennett,* 268 U.S.App.D.C. 183, 185, 840 F.2d 63, 65 (1988) (federal employers obliged to provide reasonable accommodation to the disabled); *Rodriquez v. U.S. Dept. of Treasury,* 131 F.R.D. 1, 8 (D.D.C.1990) (court must determine whether employer can reasonably accommodate employee's disability); *Whitlock v. Donovan,* 598 F.Supp. 126, 130 (D.D.C.1984), *aff'd mem.* 790 F.2d 964 (D.C.Cir.1986) (federal agency employers required to make reasonable accommodation for disabled employee); *see also Crane v. Lewis,* 551 F.Supp. 27, 31 (D.D.C.1982) (employer failed to provide reasonable accommodation to disabled employee). In addition to a prohibition against mistreatment of persons because of their family responsibilities, the Human Rights Act, like the disability laws, surely requires that employers make reasonable accommodation of such family responsibilities.

The cases on which Ms. Simpson relies were brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791(b), which requires the federal government to be a model employer and to provide reasonable accommodations for the handicapped. *See, e.g., Carter, supra,* 268 U.S.App.D.C. at 185, 840 F.2d at 65; *see also* 45 C.F.R. § 84.12 (1990). There is no requirement in

our statute that Koba be a trailblazer; it, like other employers, is obliged only to obey the law and to refrain from discrimination. The Supreme Court of Washington has held, however, that under that State's handicap discrimination statute, a private employer is required to make reasonable accommodations to the physical handicaps of its employees. *Holland v. Boeing Co.,* 90 Wash.2d 384, 583 P.2d 621, 623–24 (1978) (en banc). *See also Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 76 n. 11, 97 S.Ct. 2264, 2272 n. 11, 53 L.Ed.2d 113 (1977) (EEOC properly construed Title VII as requiring reasonable accommodation to employee's religion even before statute was amended to make that requirement explicit). But neither party has cited any authority, and we know of none, on the question whether decisions such as those cited can fairly be applied to cases involving alleged discrimination based on family responsibilities, particularly where, as here, those responsibilities may be of a moral rather than a legal character.

We are of the opinion that OHR was in no position to make an informed finding as to the existence of probable cause without first determining whether Koba had an obligation under the Human Rights Act to make a reasonable attempt to accommodate Ms. Simpson's claimed family responsibilities. One cannot rationally decide whether a duty has been breached unless one knows what that duty is. If no obligation to make reasonable accommodations existed, then the facts alleged by Ms. Simpson were insufficient to support a finding of probable cause to believe that the Act was violated. If, on the other hand, such a duty were determined to exist, the legal consequences might be entirely different, especially in the light of the Roberts affidavit. OHR would then be obliged to make findings as to whether a transfer within the organization could reasonably have been accomplished without hardship to the employer. The agency would also have to address various related issues be-

---

**22.** Neither party has addressed this question, and we mention it only to identify it. Ms. Simpson had several siblings, however, and it is less than clear that she had a duty under the law to care for her father.

fore it could properly decide the question of probable cause.

The District, citing *Honig, supra,* claims that OHR's determination of no probable cause, if reviewable at all, can be set aside only if it is "arbitrary, capricious, or an abuse of discretion." Ms. Simpson counters that the appropriate standard is "arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law.*" *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam) (emphasis added). The District's formulation, taken from a decision (*Honig*) which addressed a question of prosecutorial discretion, is in our view unduly narrow for a case in which the agency action potentially results in the premature demise of a claim of unlawful discrimination.[23] Although Ms. Simpson's articulation is a reasonable one, we need not definitively adopt it here, for under *any* reasonable standard, the agency must determine the nature of an employer's obligation before deciding whether the employer failed to carry it out.

▆▆ The issues which we have raised regarding the proper interpretation of the Human Rights Act's proscription against discrimination based on family responsibilities are, in the final analysis, questions of law. They must ultimately be resolved by the judicial branch. This court, however, gives "great weight" to reasonable interpretations of statutes by the agencies charged with their enforcement. *See, e.g., Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 550 A.2d 51, 55 (D.C.1988). The questions here presented are novel and difficult. Accordingly, we decline to decide them at this time, preferring instead to await the input of OHR and, if the case

reaches it, of the Human Rights Commission.[24]

\* \* \* \* \* \*

▆▆ The District also contends that OHR's finding of no probable cause was correct because Ms. Simpson had not made out the elements of a "disparate treatment" case. *See Rap Inc. v. District of Columbia Comm'n on Human Rights,* 485 A.2d 173, 176 (D.C.1984). But Ms. Simpson's claim, reasonably construed, is not one of disparate treatment. Rather, she contends that Koba failed to make a reasonable accommodation for her responsibilities to her father. *See, e.g., School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 288–89 & n. 19, 107 S.Ct. 1123, 1131 & n. 19, 94 L.Ed.2d 307 (1987), holding that under § 504 of the Rehabilitation Act "[e]mployers have an affirmative obligation to make a reasonable accommodation for a handicapped employee." *Id.* at n. 19. If such a duty exists and is violated, it would be incongruous to require the plaintiff also to show that a non-handicapped employee was treated differently.

The District also maintains that Ms. Simpson failed to demonstrate that she had a family need which required special accommodation. As we have previously noted, a legitimate question arises as to whether the statute applies only to legal responsibilities and, if so, whether Ms. Simpson had a legal obligation, as distinguished from a moral one, to care for her father. In other respects, however, we find the District's arguments unpersuasive.

▆▆ The District claims that Ms. Simpson did not sufficiently advise her supervisors as to what her claimed family responsibilities were. This is disputed, at least implicitly, by the affidavit of Mr. Roberts, who stated that "I knew of Ms.

---

**23.** In *Baker v. Pennsylvania Human Relations Comm'n,* 507 Pa. 325, 489 A.2d 1354 (1985), the Supreme Court of Pennsylvania held that judicial review of findings of no probable cause by that state's Human Relations Commission was extremely limited. The court reached this decision, however, because "the order does not adjudicate an individual right and the individual, denied administrative aid in enforcing his right, retains a right to bring an action in Common

Pleas." *Id.* at 333, 489 A.2d at 1358. Since a finding of no probable cause in the District leaves the complainant with no such alternative, the scope of judicial review must necessarily be broader.

**24.** The issuance of regulations relating to this aspect of the Human Rights Act would, of course, be helpful.

Simpson's responsibilities due to her father's physical handicap because it had been common knowledge at Koba."

Moreover, it is readily apparent from the record that both Koba and OHR were made amply aware of the issue. Indeed, according to the OHR investigator's "Conference Notes," the Koba representative stated, in relation to the change in Ms. Simpson's hours, that Koba "had to change the time back to 8:00 to accommodate office coverage. [The decision] had nothing to do with [Ms. Simpson's] father's physical handicap."

 Even in proceedings where litigants (such as national banks) are represented by attorneys, "[o]ur Rules, like the Federal Rules of Civil Procedure, 'reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome.'" *Riggs Nat'l Bank, supra,* 581 A.2d at 1252 (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Here, Ms. Simpson was representing herself before the Commission, and the foregoing principles apply *a fortiori. See Goodman, supra,* 573 A.2d at 1300.

## IV

### CONCLUSION

For the foregoing reasons, we reverse the judgment appealed from and remand the case to the trial court for further proceedings consistent with this opinion. That court should first determine whether the petition ought to be dismissed for equitable reasons. See pages 403–404 & n. 21, *supra.* In the event that the court decides not to dismiss, the trial court should vacate the finding of no probable cause and remand the case to OHR for still further proceedings consistent with this opinion. We hope that this case, perhaps unlike this opinion, will not violate the rule against perpetuities.

*So Ordered.*