James MURRAY, Appellant,

v.

Douglas STEMPSON, Appellee.

No. 91–SP–1479.

District of Columbia Court of Appeals.

Argued Oct. 6, 1993.
Decided Nov. 10, 1993.

appellant should first exhaust administrative remedies.[2] Accordingly, we affirm.

Lee H. Karlin, Washington, DC, appointed by the court, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and REILLY, Senior Judge.

KING, Associate Judge:

In this appeal, appellant contends the trial court erred in denying his *pro se* petition for writ of habeas corpus, in which he claimed that he has not received the good time credits he is entitled to receive under the *District of Columbia Good Time Credits Act of 1986* ("*Good Time Credits Act*").[1] The trial court denied the petition, without a hearing, ruling that habeas corpus relief was not appropriate because appellant had not exhausted the administrative remedies available to an inmate within the Department of Corrections ("Department"). Although both appellant and the government urge us to reach the merits of appellant's claim, we decline to do so because we agree with the trial court that

## I.

Appellant was convicted in 1980 of armed robbery, unauthorized use of a vehicle, assault with a deadly weapon, and carrying a pistol without a license. He was sentenced to an aggregate term of fifteen years to life imprisonment. In addition, he received a consecutive twenty-month to five-year term for a violation of the Bail Reform Act in 1981. He became eligible for parole consideration in July 1992. In November 1991, appellant filed a petition for writ of habeas corpus claiming that he had been improperly denied application of the *Good Time Credits Act* on his maximum sentence. Specifically, he maintains that the policy of the Department—denying application of good time credits to the maximum sentence for those serving life sentences—is contrary to law.

■ The *Good Time Credits Act*, by its terms, reduces both the minimum and maximum sentences. D.C.Code § 24–428(b) (1989). Once the minimum sentence, less good time, is served, an inmate is eligible for parole consideration, i.e., the inmate has reached the parole eligibility date (in appellant's case, July 1992). *See* 28 DCMR § 200.1 (1987). The decision to grant or deny parole, upon eligibility, is within the

---

1. D.C.Code § 24–428 (1993 Supp.).

2. The District of Columbia Department of Corrections has issued Department Order 4030.1C (February 15, 1991), entitled "Administrative Remedy Procedure ("ARP")," for inmates seeking "formal redress of grievances relative to their incarceration." The ARP policy order provides:

    To resolve inmate complaints through informal means whenever possible, and provide an expedient formal system for resolving grievances when informal procedures have failed. Inmates are expected to use the intra-Departmental grievance procedure before filing any legal action.

    The ARP outlines the steps an inmate should take to pursue a dispute or complaint including appeals to the Administrator for Community Correctional Centers, the Associate Director for Institutions, and then finally, the Director of the Department of Corrections ("Director"). Unless otherwise provided, the administrative process for an inmate's grievances ends with the Director. In grievances challenging the granting, withholding, forfeiture, cancellation, or restora-

    tion of good time credits, however, after the Director has "sign[ed] and render[ed] the final agency decision relative to an inmate's grievance," the inmate must then pursue review of the Director's decision to the Institutional Appeals Board. Department Order 4030.1C(VII)(E)(6) (1991); D.C.Code § 24–430(b) (1989). While § 24–430(b) states that the "decision of the board shall be final," we have no doubt that judicial review of a board decision is available. *See Shaughnessy v. Pedreiro*, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868 (1955) (word "final" should be construed to be "finality in administrative procedure rather than as cutting off the right of judicial review in whole or part"); *Simpson v. Office of Human Rights*, 597 A.2d 392, 398 (D.C. 1991) (finding that judicial review of administrative decisions is not precluded unless there is "clear and convincing evidence of a contrary legislative intent") (citation and internal quotations omitted); *see also Norris v. Freeman*, 497 A.2d 1108, 1110 (D.C.1985) (habeas corpus relief in Superior Court is not available until administrative procedures are exhausted).

discretion of the Parole Board.[3] When the maximum sentence, less good time, has been served, an inmate must be released, i.e., the inmate has reached the mandatory release date. *See* 28 DCMR § 212.1 (1987).

## II.

We conclude that we should not reach the merits of appellant's contention for several reasons. First, the parties agree that the policy of the Department—that the good time credits provision is not applicable to life sentences—is an unwritten one. We are reluctant to review, under these circumstances, since we do not know the precise nature and extent of the policy that we are being asked to apply in this appeal. If appellant chooses to further pursue this matter administratively, we would expect that, if the Department adheres to its unwritten policy, it will set forth in writing its position on the applicability of the good time credits provision to life sentences as well as its rationale for rejecting the contentions made by the inmate. Then, in the event of further judicial review, we would be presented with something of substance to consider.

Second, in this court appellant has raised, for what is apparently the first time, the argument that "the Indeterminate Sentences Act[4] ... establishes a forty-five year maximum term as the basis for the mandated application of good time credits to a maximum sentence of life imprisonment." Essentially, appellant contends that his mandatory release date must come after he has served a period of 45 years, less applicable good time credits. Neither the agency nor the trial court has addressed this contention, and we think it inappropriate to consider it for the first time in this appeal. *See Smith v. Police & Firemen's Ret. & Relief Bd.,* 460 A.2d 997, 999 (D.C.1983) ("In administrative appeals ... our function is to review decisions made by the responsible executive authority. Accordingly, we do not consider claims raised

for the first time on appeal.") (citations omitted). By requiring exhaustion of administrative remedies, we are ensuring that the precise legal arguments being relied upon by appellant will be considered by the agency in the first instance.

Third, there is no urgency to decide this matter at this time. Even if appellant obtains all the relief he claims he is entitled to receive, his mandatory release date will not occur until the year 2011 at the earliest. Thus, this petition does not challenge his current incarceration. The Supreme Court has held, however, that this fact alone will not defeat a habeas petition if postponement of the habeas hearing would result in "dimmed memories or the death of witnesses [that would] render it difficult or impossible to secure crucial testimony on disputed issues of fact." *Peyton v. Rowe,* 391 U.S. 54, 62, 88 S.Ct. 1549, 1553, 20 L.Ed.2d 426 (1968). In this case, however, there is no danger that requiring exhaustion of administrative remedies would result in the "loss of crucial evidence," *id.* at 61, 88 S.Ct. at 1553, since appellant is simply challenging the agency's interpretation and application of two statutes, i.e., the *Good Time Credits Act* and the *Indeterminate Sentence Act.*

Finally, we have held—in a case dealing with credit for time spent in custody prior to the imposition of sentence—that "[o]rdinarily, all available administrative remedies should be exhausted before resort is had to habeas corpus." *Norris v. Freeman, supra* note 2, 497 A.2d at 1110 (citations omitted). In *Norris,* the court found that "computation of the sentence is an administrative and not a judicial responsibility." *Id.* (citations omitted). Similarly, a determination of eligibility for good time credits is an administrative, not a judicial, responsibility. *See* D.C.Code § 24–430(b) (1989). In *Norris* we observed that the Department has established an Administrative Remedy Procedure

---

3. The Parole Board's authority and responsibility is set forth in D.C.Code § 24–204(a) (1989), which provides in part:
   Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not

incompatible with the welfare of society, and that he has served the minimum sentence imposed ... the Board *may authorize his release on parole....* [Emphasis added.]

4. D.C.Code § 24–203 (1989).

for inmates seeking formal redress of complaints about their incarceration, *id.* (citing Department Order No. 4030.1; *see supra* note 2), and that one must "avail himself of those procedures.... [or provide] compelling circumstances that would excuse his failure to do so." *Norris, supra,* 497 A.2d at 1111. The same rationale applies to appellant's claim. He must first bring his challenge via the ARP, as outlined in Department Order 4030.1C, and then to the Institutional Appeals Board ("Board"). *See supra* note 2. After exhausting those administrative avenues, appellant then retains the option of securing judicial review if he is dissatisfied with the decision of the Board. *See Simpson v. Office of Human Rights, supra* note 2, 597 A.2d at 398 (judicial review of agency decisions is permitted unless foreclosed by the legislature).

For these reasons, we conclude that the trial court did not err in dismissing appellant's petition for writ of habeas corpus.

*Affirmed.*